PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DANIEL A. LIND, ) | |
| ) | CASE NO. 4:21CV2165 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE BENITA Y. PEARSON |
| ) | |
| NORTHEAST OHIO CORRECTIONAL ) | |
| CENTER, *et al*., ) | |
| ) | **ORDER** |
| Defendants. ) | [Resolving ECF No. 33] |

Pending before the Court is a Motion for Summary Judgment filed by Defendants Northeast Ohio Correctional Center, CoreCivic, Inc., CoreCivic of Tennessee, LLC, Janes Giovino, M.D., Marissa Hoppel, APRN, Alexis Schneider, and Nichol Davis, L.PN. ECF No. 33. Plaintiff Daniel Lind[1] filed a brief in opposition. ECF No. 35. Defendants replied. ECF No. 36. Having reviewed the record, the motion, and the applicable law, the Court denies Defendants' motion.

**I.      Background**

On November 12, 2020, Dale W. Lind, Sr. was detained by the United States Marshals Service and transported to Northeast Ohio Correctional Center ("NEOCC"). ECF No. 32 at PageID #: 207. On November 13, 2020, Dale was seen at intake by medical staff at NEOCC, and he was prescribed 81 mg of aspirin. ECF No. 32 at PageID #: 207. Defendant Dr. Giovino

---

[1] Daniel Lind is the brother of the deceased, Dale W. Lind, Sr. Daniel is the executor of Dale's estate and Plaintiff. ECF No. 1-1 PageID #: 37.

(4:21CV2165)

saw Dale on November 17, 2020, for a clinic visit related to hypothyroidism. ECF No. 32 at PageID #: 207. During this visit, Dale expressed he was experiencing nightly heartburn, so Dr. Giovino prescribed him levothyroxine and omeprazole. ECF No. 32 at PageID #: 207. Records reflect that Dale received levothyroxine and omeprazole, but there is no record documenting he received aspirin. ECF No. 32 at PageID #: 207.

On November 22, 2020, Dale was found unresponsive in his cell at NEOCC. ECF No. 32 at PageID #: 207. After cardiopulmonary resuscitation ("CPR") was performed, Dale was transported to St. Elizabeth Hospital where he was pronounced dead. ECF No. 32 at PageID #: 207. On Dale's autopsy report, his cause of death is listed as "[h]ypertensive and dilated cardiovascular disease." ECF No. 32 at PageID #: 207.

Plaintiff's Complaint raises the following claims against Defendants: (1) medical malpractice; (2) survival; and (3) wrongful death. ECF No. 1-1 at PageID #: 42-43. Defendants now move for summary judgment because "Ohio House Bill 606 shields them from liability." ECF No. 33 at PageID #: 210. In response, Plaintiff opposes summary judgment for several reasons: (1) Defendants are not entitled to qualified immunity;[2] (2) House Bill 606 cannot be applied retroactively; (3) House Bill 606 does not apply to Defendant's misconduct; (4) Defendant's willful, wanton, and reckless disregard for Dale's health is an exception to House

---

[2] Plaintiff raises that qualified immunity should not apply to Defendants, citing *Richardson v. McKnight* which affirmed the district court's ruling that "since [petitioners] were employed by a private prison management firm, they were not entitled to qualified immunity from § 1983 lawsuits." *Richardson v. McKnight*, 521 U.S. 399, 399 (1997). Defendants are seeking civil immunity through Ohio House Bill 606, not qualified immunity, rendering Plaintiff's argument immaterial.

(4:21CV2165)

Bill 606; and (5) a genuine issue of material fact exists regarding whether aspirin was available and/or administered. ECF No. 35 at PageID #: 237.

## II. Standard of Review

"Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Scola v. Publix Supermarkets, Inc.*, 557 F. App'x 458, 462 (6th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). The fact under dispute must be "material," and the dispute itself must be "genuine." A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Scott v. Harris*, 550 U.S. 372, 380 (2007). In determining whether a factual issue is "genuine," the Court assesses whether the evidence is such that a reasonable jury could find that the non-moving party is entitled to a verdict. *Id*. ("[Summary judgment] will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of an essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The trial court is not required to search the entire record to establish that a genuine issue of material fact exists." *Malee v. Anthony & Frank Ditomaso, Inc.*, No. 1:16CV490, 2018 WL 1805402, at *2 (N.D. Ohio Apr. 16, 2018) (citing *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008)) (abrogated on other grounds). " '[I]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c),' the court may determine that fact is undisputed." *Malee,* No. 1:16CV490, 2018 WL 1805402, at *2 (quoting Fed. R. Civ. P. 56(e)(2)).

(4:21CV2165)

To survive summary judgment, the non-moving party "must 'do more than simply show that there is some metaphysical doubt as to the material facts.'" *Baker v. City of Trenton*, 936 F.3d 523, 529 (6th Cir. 2019) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved" by a factfinder. *KSA Enterprises, Inc. v. Branch Banking & Tr. Co.*, 761 F. App'x 456, 464 (6th Cir. 2019) (quoting *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Srouder v. Dana Light Axle Mfg., LLC*, 725 F.3d 608, 613 (6th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). In analyzing a motion for summary judgment, the Court "must view the evidence in the light most favorable to the nonmoving party." *Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 428 (6th Cir. 2018) (citing *Latits v. Phillips*, 878 F.3d 541, 547 (6th Cir. 2017).

### III. Discussion

#### A. Application of House Bill 606

First, the applicability of House Bill 606 ("H.B. 606") must be determined.

Defendants removed this case to federal court pursuant to 28 U.S.C. § 1442(a)(1). ECF No. 1 at PageID #: 1. "When removal of a state court action is available because the defendant is a federal officer, the substantive law to be applied is unaffected by the removal." *Bennett v. MIS Corp.,* 607 F.3d 1076, 1091 n. 13 (6th Cir. 2010) (citing *Arizona v. Manypenny*, 451 U.S. 232, 239, 101 S. Ct. 1657, 68 L. Ed. 2d 58 (1981)). Therefore, applying Ohio State law, House Bill

4

(4:21CV2165)

606 is applicable. Additionally, because Plaintiff brings suit against a "physician" (H.B. 606 (A)(39)), a "licensed practical nurse" (H.B. 606 (A)(27)), and a "health care provider" who provides "health care services" (H.B. 606 (A)(20) & (A)(21)), House Bill 606 is facially applicable to Defendants.

### B. Retroactivity of House Bill 606

Plaintiff argues that the House Bill 606 should not apply retroactively. Ohio House Bill became effective on December 16, 2020. *House Bill 606*, THE OHIO LEGISLATURE 135TH GENERAL ASSEMBLY, https://www.legislature.ohio.gov/legislation/133/hb606 (last visited Sept. 8, 2023). Dale passed on November 22, 2020, before House Bill 606 became effective. ECF No. 32 at PageID #: 207. The Ohio Constitution reads that "the general assembly shall have no power to pass retroactive laws." Ohio Const. Article II, Section 28. Both parties agree a two-tiered framework determines if a statute is unconstitutionally retroactive: (1) whether the General Assembly intended a statute to apply retroactively, and (2) if the statute is substantive or remedial. *Bielat v. Bielat,* 87 Ohio St. 3d 350, 353, 721 N.E.2d 28, 33 (2000) (citing *State v. Cook*, 83 Ohio St.3d 404, 410, 700 N.E.2d 570, 576 (1998)).

The language in House Bill 606 reveals the General Assembly intended for retroactive application. H.B. 606 (E) ("This section applies from the date of the Governor's Executive Order 2020-01D, issued March 9, 2020, declaring a state of emergency due to COVID-19, through September 30, 2021.").

Turning to the second step, the Court must determine whether this law is remedial or substantive. If a law is remedial rather than substantive, then even applied retroactively, such law would not violate the Ohio Constitution. *Bielat v. Bielat,* 87 Ohio St. 3d at 354, 721 N.E.2d at 33. While deciphering the line between substantive and remedial may be more difficult in

5

(4:21CV2165)

some cases, "readily distinguishable contours" for substantive and remedial statutes exist, providing helpful clarity. *Van Fossen v. Babcock & Wilcox Co.*, 36 Ohio St. 3d 100, 107, 522 N.E.2d 489, 496 (1988).

> A statute is substantive when it * * * impairs or takes away vested rights; affects an accrued substantive right; imposes new or additional burdens, duties, obligations, or liabilities as to a past transaction; creates a new right out of an act that gave no right and imposed no obligation when it occurred; creates a new right; or gives rise to or takes away the right to sue or defend actions at law.

*State v. White*, 132 Ohio St. 3d 344, 352, 972 N.E.2d 534, 544 (2012) (*citing Van Fossen v. Babcock & Wilcox Co.*, 36 Ohio St. 3d 100, 107, 522 N.E.2d 489, 496 (1988)). Remedial statutes "merely substitute a new or more appropriate remedy for the enforcement of an existing right." *State v. Cook*, 83 Ohio St.3d 404, 411, 700 N.E.2d 570, 577 (1998).

Both the Sixth Circuit and the Ohio Supreme Court have held that the right to sue is a substantive right. In *Gregory v. Flowers,* the Ohio Supreme Court emphasized that "a 'right to sue' is a vested substantive one, which the Constitution protects." *Gregory v. Flowers*, 232 Ohio St. 2d 48, 54, 290 N.E.2d 181, 185 (1972) (citing *Smith v. New York Cent. R. Co.,* 122 Ohio St. 45, 49, 170 N.E. 637, 638 (1930)). The Sixth Circuit, in *Greyhound Food Management v. City of Dayton*, held that Ohio Rev. Code § 2744.05(B) violated the Ohio Constitution, because before the measure was passed plaintiffs could sue political subdivisions, but after the passage they could not. *Greyhound Food Management v. City of Dayton*, 852 F.2d 866, 869 (6th Cir. 1998). The Sixth Circuit made it clear that "a statute which prevents a party from suing is one that destroys a substantive right, as that term is used in Ohio jurisprudence, no matter what the form of that destruction." *Id.* at 870.

Defendants cite to several cases that illustrate remedial statutes. In each case the remedy changed or the pathway to the remedy was altered, but the remedy was never abolished. *See e.g.,*

6

(4:21CV2165)

State ex rel. Kilbane v. Indus. Comm., 91 Ohio St. 3d 258, 258, 744 N.E.2d 708, 710 (2001) (holding "the right to a hearing [on the issue of her claim] … constituted merely a remedial right"); Wilson v. AC&S, Inc., 169 Ohio App. 3d 720, 2006-Ohio-6704, 864 N.E.2d 682 (holding "the relevant provisions … remedially changed the law … by clarifying the meaning of ambiguous phrases like 'bodily injury caused by exposure to asbestos' and 'competent medical authority'"). If applied retroactively in the instant case, House Bill 606 would not just remove the right to a hearing or clarify the meaning of a term; it would annul Plaintiff's ability to sue.

Additionally, Defendants argue that House Bill 606 does not bar Plaintiff from filing a cause of action, but rather it changes the available remedies because certain actors, such as Defendants, can raise qualified immunity as an affirmative defense. ECF No. 36 Page ID #: 316. This argument is not persuasive. In *Greyhound*, when the defendant argued that sovereign immunity merely related to the remedy available, not the cause of action, the Sixth Circuit explained that it did "not believe that the Ohio Supreme Court would take such a narrow view." Greyhound Food Management v. City of Dayton, 852 F.2d 866, 870 (6th Cir.1998). The undersigned applies the Sixth Circuit's reasoning here.

When Dale Lind passed away on November 22, 2020, his brother's right to bring this action vested. House Bill 606, effective December 16, 2020, cannot annul Daniel Lind's vested right to sue. The Court concludes, therefore, that House Bill 606 is a substantive statute, and it may not be applied retroactively. Accordingly, Defendants cannot benefit from the civil immunity protections afforded by House Bill 606.

(4:21CV2165)

### C. Failure to Administer Aspirin under House Bill 606

Assuming arguendo, even if House Bill 606 were applied retroactively in the instant case, Defendants fail to show that there is no genuine dispute as to material facts regarding the application of House Bill 606 in this case.

Defendants claim Ohio House Bill 606 shields them from liability by providing qualified civil immunity for health care and emergency services provided during the pandemic. The relevant portion of Ohio House Bill 606 reads:

> A health care provider that provides health care services, emergency medical services, first-aid treatment, or other emergency professional care, including the provision of any medication or other medical equipment or product, as a result of or in response to a disaster or emergency is not subject to professional disciplinary action and is not liable in damages to any person or government agency in a tort action for injury, death, or loss to person or property that allegedly arises from any of the following:
> (a) An act or omission of the health care provider in the health care provider's provision, withholding, or withdrawal of those services.

H.B. 606 (B)(1). Defendants purport that because of COVID-19 and the need to restrict inmate movement, pill call procedures were altered. ECF No. 33 at Page ID #: 218. According to Defendants, due to the pill procedure change, "and the need to obtain the low-dose aspirin from the clinic stock rather than a medication card, which was itself likely occasioned by COVID-related supply chain issues, [Dale] did not receive the medication prior to his death." ECF No. 33 at Page ID #: 218. Defendants contend they should receive civil immunity pursuant to House Bill 606 for failing to provide aspirin because of COVID-related procedure changes within the prison.

Defendants fail, however, to show that the changes to the pill call protocol prevented Dale from receiving aspirin. Defendants produced an affidavit that included a blanket statement from the Health Services Administrator at the Northeast Ohio Correctional Center, Dana Hivner,

8

(4:21CV2165)

who explained that there were issues in the administration of medications to Dale, and as a result, there was a delay in providing him with aspirin. ECF No. 33-1 Page ID #: 223. Ms. Hivner does not claim that the delay resulted from COVID-related change in pill procedures.

Additionally, the evidence does not support that the change in procedures resulted in the failure to administer aspirin to Dale. The parties stipulate that Dale received levothyroxine and omeprazole, which were prescribed *after* he had been prescribed aspirin. It follows, therefore, that Dale was receiving at least some of his prescribed medication. In the deposition of Defendant Nichol Davis, LPN, she testified that, to her knowledge, there was never an issue of "having enough aspirin in November of 2020." ECF No. 35-7 at PageID #: 288. She also testified that if medication was not on the medication cart, she would return to the pharmacy to obtain it. ECF No. 35-7 at 287. Finally, if an inmate did not have his own medication card for a prescription, Defendant Alexis Schneider, L.P.N., testified (in her deposition) that "if it's something like an aspirin, we usually have those stock bottles … so if we didn't have his, we would just get it out of the stock until he got his own card of it." ECF No. 35-6 at PageID #282. In sum, the record reveals that, despite changes to the pill protocol, Dale was receiving some of his prescribed medication, aspirin was available in November of 2020, and procedures were in place for nurses to administer aspirin even if an inmate did not yet have a personal medication card or if aspirin was not on the medication cart.

Therefore, Defendants have not shown that there is no genuine dispute as to any material fact. It remains disputed whether the COVID-related changes in pill call procedures led to the failure to administer aspirin to Dale.

(4:21CV2165)

## IV. Conclusion

Defendants' Motion for Summary Judgment (ECF No. 33) is denied.  The Final Pretrial Conference and Trial will proceed in accordance with the Civil Trial Order.  *See* ECF No. 28.

IT IS SO ORDERED.

| | |
|---|---|
| September 11, 2023 | */s/ Benita Y. Pearson* |
| Date | Benita Y. Pearson |
| | United States District Judge |